ⒸCOPY

FILED

1  Paul R. Kiesel, Esq. (SBN 119854)
   kiesel@kbla.com
2  Patrick DeBlase, Esq. (SBN 167138)
   deblase@kbla.com
3  **KIESEL BOUCHER LARSON LLP**
4  8648 Wilshire Boulevard
5  Beverly Hills, California 90211-2910
6  Telephone: (310) 854-4444

7
   **HORWITZ, HORWITZ & PARADIS,**
8  **Attorneys at Law**
9  Paul O. Paradis, Esq. (*Pro Hac Vice Pending*)
   Michael A. Schwartz, Esq. (*Pro Hac Vice Pending*)
10 Gina M. Tufaro, Esq. (*Pro Hac Vice Pending*)
11 28 West 44th Street - 16th Floor
   New York, NY 10036
12 Telephone: (212) 404-2200
13
14 (Additional counsel listed on signature page)
15 Attorneys for Plaintiff, Ellen Diamond,
16 individually, and on behalf of all others similarly situated

17           **UNITED STATES DISTRICT COURT**
18           **CENTRAL DISTRICT OF CALIFORNIA**

19 ELLEN DIAMOND, individually,      )   CV09-0912
20 and on behalf of all others similarly )
   situated,                         )   **CLASS ACTION COMPLAINT**
21         Plaintiff,                )   **FOR VIOLATIONS OF THE**
                                     )   **SHERMAN ACT; THE**
22                                   )   **CONSUMER LEGAL REMEDIES**
           v.                        )   **ACT; NEW YORK GENERAL**
23                                   )   **BUSINESS LAW**
24 TICKETMASTER                      )
25 ENTERTAINMENT, INC. and           )
   TICKETSNOW.COM, INC.,             )   **JURY TRIAL DEMANDED**
26         Defendant.                )
27                                   )
28 _____)

                     1

              **CLASS ACTION COMPLAINT**

2009 FEB -6  AM 10:26

Plaintiff Ellen Diamond ("Plaintiff") brings this action as a nationwide class action on behalf of herself and all others similarly situated against Defendants TicketMaster Entertainment, Inc. ("TicketMaster") and TicketsNow.com, Inc. ("TicketsNow") (collectively "Defendants") and alleges the following upon personal knowledge as to her own acts, and upon information and belief as to all other matters. Plaintiff's information and belief are based on the investigation conducted by Plaintiff's counsel.

## NATURE OF THE ACTION

1.      This class action is brought on behalf of all those who purchased event tickets from TicketsNow during the period January 15, 2008 trough the time when Defendants cease the wrongful actions detailed herein (the "Class" and "Class Period," respectively).

2.      This class action is brought to remedy unlawful acts taken by Defendants, the purpose of which was to to wrongfully corner or manipulate the market for event tickets, and thereby cheat consumers out of millions of dollars.

3.      During the Class Period, Defendant TicketMaster, a primary seller of event tickets, conspired with its wholly-owned subsidiary Defendant TicketsNow, an online marketplace at which ticket brokers re-sell event tickets, to artificially inflate the price of event tickets through the use of a fraudulent scheme.

4.      Defendants' scheme is quite simple.  TicketMaster procures tickets for events directly from venues and promoters.  Those tickets are allegedly made available to consumers for purchase over the Internet at www.ticketmaster.com.  In furtherance of its monopoly over the event ticket market, however, TicketMaster sells large quantities of its tickets to TicketsNow's ticket brokers, either prior to or at the exact moment that tickets for an event go on sale.  Because TicketsNow's ticket brokers have already purchased large quantities of TicketMaster's inventories of tickets, tickets that should otherwise be available for sale to event ticket purchasers at face price are sold out within seconds of a sale's

**CLASS ACTION COMPLAINT**

commencement.   At that time, event ticket purchasers are then redirected to TicketsNow's website, www.ticketsnow.com, where prices for tickets for the same event are sold at prices above the ticket's face price, sometimes marked up by hundreds or thousands of dollars.   When a consumer purchasers the greatly-marked-up ticket from TicketsNow, TicketsNow, TicketMaster's wholly-owned subsidiary, receives 15% of the sale price.

5.     Accordingly, TicketMaster profits twice as the result of the monopolistic scheme – once from the sale of its tickets to TicketsNow brokers, and again from the sale of tickets by TicketsNow to event ticket purchasers at artificially inflated prices.

6.     As a result of this unlawful scheme to wrongfully corner or manipulate the market for even tickets, Defendants have illegally bilked event ticket purchasers out of millions of dollars.

## JURISDICTION and VENUE

7.     This Court has jurisdiction over all causes of action asserted herein pursuant to 15 U.S.C. § 2, 15 U.S.C. § 15 and 28 U.S.C. § 1332.

8.     Venue is proper in this Court pursuant to Sections 15(a) and 22 of the Sherman Act and 28 U.S.C. § 1391 (b) and (c) because Defendants are found or transact business in the Central District of California.   The interstate trade and commerce described herein has been carried out, in part, within the Central District of California.

## PARTIES

9.     Plaintiff Ellen Diamond is a citizen of Merrick, New York.   On September 2, 2008, Plaintiff purchased two tickets for Cirque du Soleil through TicketsNow for a total of $385.25 ($161.00/ticket plus $48.30 service charge plus $14.95 shipping).

10.     TicketMaster is the world's leading live entertainment and marketing company.  TicketMaster operates in 20 global markets, providing ticket sales and

**CLASS ACTION COMPLAINT**

distribution through www.ticketmaster.com.   TicketMaster is incorporated in Delaware, and has its principal place of business located at 8800 Sunset Blvd., West Hollywood, California.   On July 1, 2008, the Board of Directors of IAC/InterActiveCorp, approved a plan to separate IAC into five separate, publicly traded companies via the distribution of all of the outstanding shares of common stock of four of its wholly-owned subsidiaries, including Ticketmaster Entertainment, Inc. On August 20, 2008, in connection with the spin-off, IAC distributed to its stockholders all of the outstanding shares of common stock of Ticketmaster Entertainment

11.   TicketsNow.com, Inc. is a wholly-owned subsidiary of Ticketmaster. TicketsNow is an online platform for ticket brokers looking to re-sell event tickets for concerts, sporting events and plays. With about 2 million event tickets for sale, TicketsNow has one of the world's largest inventories of secondary market tickets from licensed brokers and individual sellers.  TicketsNow has its principal place of business located at 620 N. Route 31, Suite C, Crystal Lake, IL  60012

## SUBSTANTIVE ALLEGATIONS

### Relevant Market

12.   The relevant geographic market is the United States.

13.   The relevant product market for analyzing the claims in this case is the event ticket sales market, including tickets for concerts, sporting events and plays.

### History of TicketMaster

14.   Prior to the creation of TicketMaster, purchasers of tickets were forced to select seats from those that had been allotted to a particular vendor. In the event that the vendor was nearly sold out, the purchaser might be forced to buy bad seats even though better seats were available through other ticket sellers. Melees occasionally erupted when ticket buyers, after standing in line for hours at one place, found that the vendor was sold out or that better seats were available elsewhere.

**CLASS ACTION COMPLAINT**

15.   In 1978, TicketMaster was created. TicketMaster used an innovative computer program that networked several computers in such a way that a person buying an event ticket at a box office could quickly select from the total reserve of seats available. TicketMaster, thus, became one of several small vendors in the late 1970s and early 1980s that pioneered the computerized ticket sales industry. Ticketmaster, with its unique computer-based vending system, managed to increase its ticket sales to about $1 million annually by 1981.

16.   Not only did purchasers of tickets take advantage of TicketMaster's new computerized system, promoters did, as well, giving TicketMaster exclusive rights to sell their tickets.

17.   In the early 1980's, TicketMaster's closest competitor was a struggling company known as Ticketron.   In 1991, however, TicketMaster purchased Ticketron's assets, thereby providing TicketMaster a virtual monopoly on the ticket sales industry.  With Ticketron out of the picture, TicketMaster's sales began rapidly rising toward the $1 billion mark.

18.   In 1996, TicketMaster went public and continued its growth through a series of acquisitions of its competitors, thereby maintaining its monopoly over the industry.

19.   In 2007, TicketMaster sold more than 141 million tickets valued at over $8.3 billion.

**The Secondary Ticket Sales Market**

20.    Although TicketMaster is a seller of tickets on the primary ticket sales market, a secondary market for ticket sales also exists.

21.   The practice of reselling tickets was once the purview of street-corner scalpers and fly-by-night ticket brokers.  With the advent of the Internet, however, the ticket resale market has gained legitimacy.  Internet companies that resell tickets, such as StubHub ("StubHub"), a clearinghouse where a host of different sellers can offer their tickets, side by side, so that buyers may pick and choose,

**CLASS ACTION COMPLAINT**

have taken steps to clean-up the resale industry's image by weeding out con-artists and by offering certain guarantees.

22.    While estimates on the size of the ticket resale vary, some have estimated that the secondary market brings in approximately $2 to $5 billion a year in the United States alone.

23.    StubHub is the market leader in ticket resales.

**TicketMaster's Initial Attempts At Dominating
The Secondary Ticket Sales Market Fail**

24.    By earlier 2008, TicketMaster's tremendous dominance in the primary ticket sales market was reknown.  In stark contrast, however, TicketMaster had failed to establish any similar dominance in the secondary ticket market by early 2008.

25.    Because TicketMaster initially failed to involve itself in the secondary ticket sales market, it drew criticism from industry analysts.  For example, securities analyst Joe Bonner, who tracks Ticketmaster's former parent company New York-based IAC/InterActiveCorp, told USA Today: "You have to look at the secondary market as something that is a real threat to Ticketmaster. They missed the boat. StubHub has been around a few years now already. They weren't as proactive as they probably should have been."

26.    Additionally, Eric Baker, founder and CEO of Viagogo.com, a European ticket resale website, has described the loosening of Ticketmaster's grip on the primary ticket sales market as "the equivalent in the ticketing industry of the fall of the Roman Empire."

27.    Hoping, at first, to do away with the secondary market, which had delivered a financial blow to TicketMaster, TicketMaster sought to craft legislation that would abolish or greatly restrict ticket resellers.  StubHub's CEO, Jeff Fluhr

**CLASS ACTION COMPLAINT**

1  noted, however, that "TicketMaster's efforts to craft legislation have so far come
2  up dry."

3      28.     Following its failed attempt to restrict the resale of tickets through
4  legislation, TicketMaster adopted an "if you can't beat them, join them" approach
5  and set out to conquer the secondary ticket sales market.  In November 2005,
6  TicketMaster launched a fan to fan secondary ticket resale called TicketExchange.
7  TicketExchange, however failed to gain widespread acceptance and critics
8  commented that TicketExchange had seen only "lackluster" performance.

9

**TicketMaster Learns How To Corner The Secondary**
10  **Ticket Sales Market From RMG, Technologies, Inc.**
11

12      29.     Ticketmaster suffered another blow to its sales in 2007 when RMG
13  Technologies, Inc. ("RMG"), d.b.a. ticketbrokertools.com, marketed a software
14  product that allowed ticket brokers to barrage TicketMaster's website, in
15  circumvention of certain safeguards put into place by TicketMaster, and reserve
16  tickets from TicketMaster, which RMG ticket brokers then purchased and resold to
17  the public at greatly inflated prices.

18      30.     TicketMaster filed suit against RMG seeking a preliminary injunction,
19  which a federal judge in Los Angeles ultimately granted.

20      31.     According to papers filed by TicketMaster, RMG ticket resellers were
21  able to reserve tickets through Ticketmaster every 10 seconds, ultimately
22  successfully reserving seats over 8,000 times a day.  As a result of RMG's acts, the
23  tickets that were supposed to be made available to the public through TicketMaster
24  were no longer available through TicketMaster.  RMG then profited handsomely
25  by reselling the tickets it had obtained from Ticketmaster to event ticket purchasers
26  at  wildly marked-up prices.

27

28

**CLASS ACTION COMPLAINT**

**TicketMaster Acquires TicketsNow, An Integral Player In Furtherance Of Its Conspiracy To Monopolize The Secondary Ticket Sales Market**

32. Having: (i) tried to thwart the progress of the secondary ticket sales market through legislation; (ii) failed to successfully gain footing with TicketExchange and (iii) witnessed RMG and it's ticket resellers reaping huge profits by reselling event tickets purchased from TicketMaster, TicketMaster was desperate to find away to gain a position of strength in the secondary ticket sales market.

33. TicketMaster, however, lacked a vehicle by which it could gain entrance into the secondary market for event tickets. TicketMaster found that vehicle in TicketsNow.

34. TicketsNow was founded in 1999 and is an on-line marketplace for consumers who wish to purchase tickets from ticket brokers. TicketsNow maintains a database of tickets sold by "established ticket brokers" and "individuals," according to TicketsNow's website.

35. TicketsNow was named in the Inc. 500 Index of fastest-growing privately held companies in 2004 and 2006. TicketsNow is the second largest on-line ticket reseller, second only to StubHub, having sold $200 million worth of tickets in 2006.

36. On January 15, 2008, TicketMaster acquired TicketsNow for $265 million. According to a TicketMaster press release dated January 15, 2008, "The acquisition will make TicketMaster a leading company in the resale category." Sean Moriarty, President and CEO of TicketMaster further stated, "We are confident that combining TicketsNow's strong resale network with our audience and distribution capabilities will enable us to set a new standard in the resale category."

**CLASS ACTION COMPLAINT**

37.     While TicketMaster touted the acquisition as a way for it to legitimately gain dominance in a market that had passed it by, commentators stated that the acquisition raised a host of questions.  For example, *The Wall Street Journal* reported on January 15, 2008, "[t]he acquisition raises potentially thorny questions for TicketMaster, which has previously sued brokers (RMG and its clients) who (circumvented certain TicketMaster safeguards) to scoop up tickets faster than regular fans can, and then resell them for big profits on sites such as TicketsNow."  Such criticism was, indeed, a sign of things to come.

**TicketMaster and TicketsNow's Conspiracy To**
**Monopolize The Secondary Ticket Sales Market**

38.     Equipped with the knowledge of how RMG was able to manipulate TicketMaster's own system and make tickets instantaneously available to ticket resellers (and at the same time, unavailable to the ticket buying public), TicketMaster and TicketsNow devised a scheme whereby TicketMaster sells TicketsNow's ticket brokers event tickets, which are supposed to be sold directly to the public, prior to or at the time tickets are scheduled to go on sale on TicketMaster's website, www.ticketmaster.com.

39.     Because TicketsNow's ticket brokers have already purchased large quantities of TicketMaster's inventories of tickets, tickets are sometimes sold out within seconds of a ticket event's sale's commencement.

40.     When a consumer attempts to purchase a ticket from TicketMaster, through the TicketMaster website, consumers are informed that tickets are either unavailable or presented with poor ticket seating location options.  Consumers are either then redirected to TicketsNow's website, www.ticketsnow.com, or simply told that the only tickets available are those on TicketsNow, which have been wildly marked up, sometimes by thousands of dollars.

**CLASS ACTION COMPLAINT**

41.   When a consumer purchasers the greatly-marked-up ticket from TicketsNow, TicketMaster, through TicketsNow receives a 15% commission on the sale.

42.   Accordingly, TicketMaster profits twice as the result of the monopolistic scheme – once from the sale of its tickets to TicketsNow ticket brokers, and once from the sale of tickets by TicketsNow to event ticket purchasers at artificially inflated prices.

43.   Remarkably, TicketMaster Vice-President, Joe Freeman has bold-facedly acknowledged the unfairness of the situation.  Freeman stated in relevant part, "It seems to people (when they are automatically redirected to TicketsNow's website) it's instantaneous and they've never had a fair shot."

44.   In response to consumer complaints about Defendants' illegal conduct, the Consumer's Association of Canada has publicly stated in a Westmount Examiner article dated January 2, 2009, "It's a conflict. It's a monopoly, its unconscionable."

**Consumers Complain About Defendants' Illegal Conduct**

45.   Hundred, if not thousands of consumers, have voiced their outrage over Defendant's illegal conduct by posting complaints on the Internet.  Below is just a sampling of such complaints:

> I went on to the ticketmaster.com Web site on Saturday morning, Jan. 31 at 8:55 a.m. to purchase Jimmy Buffett tickets for a concert in Waikiki on Feb. 28. The tickets were to go on sale at 9 a.m. but I went on early just in case they opened for sale a little early. They didn't. But at 9 a.m. on the button, I got through and clicked on best available for 2 tickets. At the venue here in Waikiki, there are seats and then there is lawn seating way in the back. And at 9:00 a.m. (the clock had not even clicked over to 9:01 yet) the only seats available were lawn seats. So I hit try again (or what ever the option is to try for better seats. and it came up with only lawn seats again, and again. Six or eight times. Then, instead of hitting best

10

**CLASS ACTION COMPLAINT**

available, I decided to cue in specifically $125 seats the best ones. This time, while I was still only offered lawn seats, the web site gave me the option of clicking on Tickets Now for better seat options.   (Some     in     the     front     seats     sections.)

So I clicked on that. The tickets here were very expensive twice the price of the most expensive ones on ticketmaster's face value seats. But because we really wanted to be in seats, not on the lawn, I purchased 2 tickets in Section C Row 3 for $239 each. It wasn't until I received an email confirmation later, that I was informed of the $35.85 EACH (so $70 plus dollars) service charge they were charging me PLUS shipping charges of $14.95 for a grand total of $564.65. (P.S. Ticketmaster's service charge is $11.70 each ... so again, this is more than triple the cost for service. Now, in spite of the fact that this was more than double the $250.

***

Never thought Phish would let this happen. On the day and at 10:00 AM the Asheville event went on sale. TicketMaster site sent me straight to TicketsNow, lead me to believe that I got 4 tickets for $230..HA HA.. That is 230 EACH!!!!! Now TicketsNow will not let me out of the event, cancel my order. That is $1072.85 for 4 tickets... I thought you the Phish guys had a thing about scalping??? But right online I was scalped, not 5 minutes into the General Admission sale. Very disappointed.

***

Phish tickets were on sale at their site for 7 times the face value one second after selling out. The average price for a $50 ticket is $370.

I believe the tickets never really went on sale to the public. I have dozens of friends that had the same experience.

***

ticketmaster never even tried to sell tickets to deer creek and pittsburgh, at 10am it was redirecting you to ticketsnow. i understand if the show is sold out and then they offer you the choice to go to ticketsnow, but that was not the case. it even said as

11

**CLASS ACTION COMPLAINT**

it was redirecting you to ticketsnow that "ticketmaster is not selling tickets for this show, but you can get them at ticketsnow".

**Defendant's Most Recent Monopolization**
**of The Secondary Ticket Sales Market**

46.     On February 2, 2009, at 9:00am, tickets for a concert by Bruce Springsteen, a popular music performer, were to go on sale on TicketMaster's website.

47.     Within seconds of the sale's commencement, consumers who attempted to purchase tickets were met with a notice that the TicketMaster site was experiencing technical difficulties that impaired them from making a purchase. Thousands of others who were fortunate enough to get beyond the message of technical difficulty were informed that tickets to the the Bruce Springsteen shows were unavailable.  Consumers were then either re-directed to the TicketsNow website, where tickets were available (within seconds of the TicketMaster sale beginning) at a greatly marked-up price, or offered tickets from TicketsNow at a value marked up hundreds of dollars beyond their original face value.  Tickets with a face value of $65 and $95 were listed for sale for $200-$4,998.

48.     Below is quote from a consumer who attempted to buy Bruce Springsteen tickets from TicketMaster on February 2, 2009:

> I was on the Ticketmaster site shooting for Bruce Springsteen tickets for Chicago, refreshed the page within 5 seconds of when they went on sale at 11:00.00, went through the ordering page, filled out the code word, hit "2 TICKETS, ANY PRICE, BEST AVAILABLE," and sent the page before 11:00.20.

> Response:

> Quote
> Sorry, no exact matches were found, but other tickets may still be available.

12

**CLASS ACTION COMPLAINT**

\* Select "Best Available" or "Any Price"
\* Change the quantity of tickets requested
\* Double check your promotional code or password, if you used one
\* At the time of your search, another customer may have been viewing the tickets you want and then decided not to buy them

**Expand your search at TicketsNow:**
**TicketsNow More Info**
**What is TicketsNow?**

**TicketsNow provides secure and convenient access to event tickets that are supplied by professional resellers and fans.**

**Tickets are listed at market price, which is often above face value. All tickets sold through TicketsNow are 100% guaranteed.**

**The artist and/or venue for this event may not be affiliated with TicketsNow.**
**Sections 302 - FLR GA**
**$161-$213**
**Sections 309 - 119**
**$214-$241**
**Sections FLOOR - 110**
**$241-$284**
**Sections 204 - 219**
**$316-$375**
**Sections 208 - 121**
**$375-$641**

Remember, this is within **30 seconds** of the tickets going on sale.

(Emphasis added).

49.     This above-quoted experience clearly demonstrates the complete effectiveness of Defendants' scheme.

---

13

**CLASS ACTION COMPLAINT**

50.   Only one day after of the execution of Defendants' scheme involving Brue Springsteen, United States Representative Bill Pascrell of New Jersey wrote to the Federal Trade Commission and the United States Department of Justice, asking that the two entities investigate the relationship between the Defendants (the "Pascrell Letter").  Rep. Pascrell wrote in relevant part:

> I am writing today to direct your attention to a potential conflict of interest regarding Ticketmaster and its affiliate company, TicketsNow. This issue has been brought to my attention through constituent complaints and press reports regarding the online sale of Bruce Springsteen concerts tickets at the IZOD Center in New Jersey and other locations all across the country.

> As you know, Ticketmaster is a large ticket sales and distribution company that often serves as a venue's sole ticketing agent.  A large percentage of their sales are made online through Ticketmaster.com.  In a recent effort expand its business Ticketmaster acquired TicketsNow, a website which specializes in the secondary, resale market for tickets.

> When tickets for Bruce Springsteen's new tour went on sale exclusively through Ticketmaster at 9:00 a.m. on Monday, February 2, 2009, scores of fans in New Jersey were met with technical difficulty on Ticketmaster.com that impaired them from making a purchase. Thousands of others who were fortunate enough to get beyond the technical problems were informed that the shows were sold out. Conspicuously placed on the same screen that informed fans of ticket unavailability was an alternative purchasing option from TicketsNow.com.  It offered the same tickets at a value marked up hundreds of dollars beyond their original face value.

> **I am troubled by how quickly tickets priced exponentially higher became available on the secondary market to thousands of rejected fans, many who also endured unfortunate technical problems on Ticketmaster.com.**

> **I am concerned that the business affiliation between Ticketmaster and TicketsNow may represent a conflict of interest that is detrimental to the average fan.  There is a significant potential for abuse when one company is able to monopolize the primary market**

**CLASS ACTION COMPLAINT**

**for a product and also directly manipulate, and profit from, the secondary market. Additionally, the speed with which tickets were made available on Ticketmaster's official resale affiliate site raises questions about whether TicketsNow brokers were given preferential treatment instead of competing on a level playing field with average consumers to purchase the tickets.**

Letter from Pascrell to Chairman Kovacic dated February 3, 2009. (Emphasis added).

51.     The very next day, Bruce Springsteen posted an open letter to his fans on his website apologizing for Defendants' wrongful acts (the "Springsteen Letter"). The Springsteen Letter denounced Defendants' actions and stated:

**A LETTER TO OUR FANS:**

We know there was much confusion regarding Ticketmaster and TicketsNow during last Monday's on-sale dates. We were as confused as you were, as we were given no advance notice of the major changes in the Ticketmaster-TicketsNow world…

**Last Monday, we were informed that Ticketmaster was redirecting your log-in requests for tickets at face value, to their secondary site TicketsNow, which specializes in up-selling tickets at above face value. They did this even when other seats remained available at face value. We condemn this practice.**

**We perceive this as a pure conflict of interest. Ticketmaster is there to ensure that we have a good, fair sale of our tickets at their face value plus normal ticketing charges. TicketsNow is supposed to be a secondary site where people who already have tickets may exchange, trade, and, unfortunately, speculate with them. We have asked this redirection from Ticketmaster to TicketsNow cease and desist immediately and Ticketmaster has agreed to do so in the future and has removed its unwanted material from their and our site.**

\*\*\*

15

**CLASS ACTION COMPLAINT**

**The abuse of our fans and our trust by Ticketmaster has made us as furious as it has made many of you. We will continue to do our utmost now and in the future to make sure that these practices are permanently curtailed on our tours**.

Letter from Springsteen to Fans dated February 4, 2009.  (Emphasis added).

52.    That same day, New Jersey's Attorney General's Office launched an investigation of TicketMaster after hundreds of fans contacted its Division of Consumer Affairs.   In commenting briefly on the investigation, Division Chief David Szuchman stated, "This is just a tremendous response, it really gives us a good idea about how widespread the problem was."

53.    In response to the tremendous pressure created by the Pascrell Letter, the Springsteen Letter and the investigation commenced by New Jersey's Attorney General's Office, TicketMaster issued a statement, acknowledging its wrongful acts.  In an Open Letter of Apology, TicketMaster stated:

**We recognize that we need to change our course. We have committed to Bruce and state publicly here that we have taken down all links for Bruce's shows directing fans from Ticketmaster to TicketsNow. This redirection only occurred as a choice when we could not satisfy fans' specific search request for primary ticket inventory, but to make sure there is no misunderstanding in the future, we also publicly state that we will never again link to TicketsNow in a manner that can possibly create any confusion during a high-demand on-sale. . . .**

Open Letter from TicketMaster dated February 4, 2009.

### Defendants' Motivation Behind The Monopolistic Scam

54.    Defendants' were motivated to conspire, and ultimately manipulate and monopolize the secondary ticket sales market in order to counter the financial distress that Defendant TicketMaster had been experiencing.

**CLASS ACTION COMPLAINT**

55.     According to an article published on TicketNews.com, on October 27, 2008, entitled *TicketsNow To Layoff More Than 60 From Illinois HQ*, "[t]rouble has hit the offices of nation's second-largest secondary ticket company TicketsNow with the news that the company is cutting 62 jobs from its Illinois headquarters."

56.     These cuts were among the 300 proposed TicketMaster as part of a $35 million in operational savings that Ticketmaster was seeking.

57.     At the time that the jobs cuts were announced, TicketMaster's stock was trading below $9.30, down from its high of $27 per share only two months earlier.  At the time that this instant action was filed, TicketMaster's stock was trading at 6.96 per share.

58.     Accordingly, Defendants sought to – and did – illegally recoup the financial losses that they were incurring by engaging in the illegal antitrust activities described herein.

## CLASS ALLEGATIONS

59.     Plaintiff brings this action both as a nationwide class action on behalf of all those who purchased event tickets from TicketsNow during the period January 15, 2008 through the time when Defendants cease the wrongful actions detailed herein

60.     Members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff estimates that there are millions of Class members across the United States.

61.     There are questions of law and fact common to all the members of the Class that predominate over any questions affecting only individually members, including:

> a.  whether Defendants engaged in a monopolistic scheme as alleged herein; and

**CLASS ACTION COMPLAINT**

1           b.   whether Plaintiffs and members of the Class have been damaged

2              by this scheme and, if so, the amount of such damage.

3      62.     The claims of Plaintiff are typical of the claims of the members of the

4 Class. Plaintiff has no interests antagonistic to those of the Class, and Defendants

5 have no defenses unique to Plaintiff.

6      63.     Plaintiff will fairly and adequately protect the interests of the Class, and

7 have retained attorneys experienced in class and complex litigation.

8      64.     A class action is superior to other available methods for the fair and

9 efficient adjudication of this controversy for the following reasons:

10           a. It is economically impractical for members of the Class to

11              prosecute individual actions;

12           b. The Class is readily ascertainable and definable; and

13           c. Prosecution as a class action will eliminate the possibility of

14              repetitious litigation.

15      65.     Plaintiff does not anticipate any difficulty in the management of this

16 litigation.

17 **COUNT I**

18

19 **Section 2 of the Sherman Act: Conspiracy to Monopolize the Secondary**

20 **Market for Ticket Sales**

21

22      66.     This claim is brought against TicketMaster and TicketsNow, pursuant

23 to Section 4 of the Clayton Act, 15 U.S.C. §15, for damages sustained as a result of

24 the Defendants' violation of Section 2 of the Sherman Act, 15 U.S.C. §2, in

25 connection with an overarching conspiracy to acquire and exercise monopoly

26 power with respect to secondary market ticket sales. TicketMaster and

27 TicketsNow conspired to acquire and exercise monopoly power with respect to the

28

18

**CLASS ACTION COMPLAINT**

secondary market for ticket sales.  The Defendants participated in the overarching conspiracy as follows:

67.    TicketMaster procures tickets for events directly from venues and promoters.  Those tickets are allegedly made available to consumers for purchase over the Internet at www.ticketmaster.com.  In furtherance of its monopoly over the event ticket market, however, TicketMaster sells large quantities of its tickets to TicketsNow's ticket brokers, either prior to or at the exact moment that tickets for an event go on sale.  Because TicketsNow's ticket brokers have already purchased large quantities of TicketMaster's inventories of tickets, tickets that should otherwise be available for sale to event ticket purchasers are sold out within seconds of a sale's commencement.  At that time, event ticket purchasers are then redirected to TicketsNow's website, www.ticketsnow.com, where tickets for the same event are marked up by thousands of dollars.  When a consumer is forced to purchase the greatly-marked-up ticket from TicketsNow, TicketMaster receives a 15 % commission on the sale price.

68.    Defendants' specific intent to acquire a monopoly position in the secondary market for ticket sales is evidenced by, among others, the following overt acts:

a.    On January 15, 2008, TicketMaster acquired TicketsNow for $265 million.

b.    TicketMaster sells large quantities of its tickets to TicketsNow's ticket brokers, either prior to or at the exact moment that tickets for an event go on sale.

69.    Defendants' overt acts had the following effects:

a. By supplying large quantities of its tickets to TicketsNow, TicketMaster's inventories of tickets are sold out within seconds of a sale's commencement.

**CLASS ACTION COMPLAINT**

b. Once the tickets are sold out on TicketMaster, consumers are then redirected to TicketsNow's website, www.ticketsnow.com, forcing consumers to purchase their tickets where tickets for the same event are marked up by thousands of dollars.

c.    When a consumer purchases the greatly-marked-up ticket from TicketsNow, TicketMaster receives a 15 % commission on the sale.

d.    TicketMaster profits twice as the result of the monopolistic scheme.

70.    Plaintiff Diamond is a member of the Class.  Therefore, as a direct and proximate result of Defendants' acts in conspiring to exercise monopoly power, Plaintiff was damaged in her business or property.  In addition, members of the class were likewise damaged in their business or property.  Plaintiff and members of the class are entitled, under 15 U.S.C. § 15(a) to, among other relief, treble damages and the cost of suit including reasonable attorneys fees.

## COUNT II

## Section 2 of the Sherman Act: Attempt to Monopolize the Secondary Market for Ticket Sales

71.    Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

72.    This claim is brought against the Defendants pursuant to Section 4 of the Clayton Act, 15 U.S.C. §15, for damages sustained as a result of the Defendants' violation of Section 2 of the Sherman Act, 15 U.S.C. §2, by reason of the attempt to exercise monopoly power with respect to secondary market ticket sales.

73.    At first, TicketMaster hoped to do away completely with the secondary market for ticket sales by attempting to craft legislation that would abolish or greatly restrict ticket resellers.  When the legislation to restrict the progress of

**CLASS ACTION COMPLAINT**

resellers failed, TicketMaster launched TicketExhange in an effort to attempt to monopolize the secondary market for ticket sales. When TicketExchange failed to take off, TicketMaster's attempt to monopolize the secondary market for ticket sales was derailed. Finally, TicketMaster made a subsequent attempt to monopolize the secondary market by acquiring TicketsNow on January 15, 2008. This subsequent attempt resulted in a successful monopolization of the secondary market for ticket sales.

74. The Defendants intent and attempt to create a monopoly position in the secondary market for ticket sales is evidenced by, among other things:

a. In November 2005, TicketMaster launched TicketExchange.

b. On January 15, 2008, TicketMaster acquired TicketsNow for $265 million.

c. TicketMaster sells large quantities of its tickets to TicketsNow's ticket brokers, either prior to or at the exact moment that tickets for an event go on sale.

75. Plaintiff Diamond is a member of the Class. Therefore, as a direct and proximate result of Defendants' acts in conspiring to exercise monopoly power, Plaintiff was damaged in her business or property. In addition, members of the class were likewise damaged in their business or property. Plaintiff and members of the class are entitled, under 15 U.S.C. § 15(a) to, among other relief, treble damages and the cost of suit including reasonable attorneys fees.

## COUNT III

### Section 2 of the Sherman Act: Monopolization of the Secondary Market for Ticket Sales

76. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

**CLASS ACTION COMPLAINT**

77.    This claim is brought against the Defendants pursuant to Section 4 of the Clayton Act, 15 U.S.C. §15, for damages sustained as a result of Defendants' violation of Section 2 of the Sherman Act, 15 U.S.C. §2, by reason of the exercise of monopoly power with respect to the secondary market for ticket sales.

78.    TicketMaster learned how to monopolize the secondary ticket sales market from RMG.  TicketMaster discovered that RMG ticket resellers were able to reserve tickets through Ticketmaster every 10 seconds, ultimately successfully reserving seats over 8,000 times a day.  As a result of RMG's acts, the tickets that were supposed to be made available to the public through TicketMaster, were diverted to RMG brokers.  Consumers, however, could only purchase the usurped tickets from RMG's ticket brokers at marked-up prices.  Consequently, TicketMaster appropriated this practice and implemented it into its own business model with the acquisition of TicketsNow.

79.    The Defendants exercised their monopoly power by:

a. Supplying large quantities of its tickets to TicketsNow, TicketMaster's inventories of tickets are sold out within seconds of a sale's commencement.

b. Once the tickets are sold out on TicketMaster, consumers are then redirected to TicketsNow's website, www.ticketsnow.com, forcing consumers to purchase their tickets where tickets for the same event are marked up by as much as thousands of dollars.

80.    The Defendants exercise of monopoly power had the following effects:

a. When a consumer purchases the greatly-marked-up ticket from TicketsNow, TicketMaster receives a 15 % commission from the sale price.

b. TicketMaster profits twice as the result of the monopolistic scheme.

c. Defendants have bilked consumers of millions of dollars.

**CLASS ACTION COMPLAINT**

1   81.   Plaintiff Diamond is a member of the Class.  Therefore, as a direct and
2   proximate result of Defendants' acts in exercising monopoly power, Plaintiff was
3   damaged in her business or property.  In addition, members of the class were
4   likewise damaged in their business or property.  Plaintiff and members of the class
5   are entitled, under 15 U.S.C. § 15(a) to, among other relief, treble damages and the
6   cost of suit including reasonable attorneys fees.

7                                    **COUNT IV**

8   **(For Violations of Consumer Legal Remedies Act § 1770 For Injunctive**
9                                    **Relief)**

10   82.   Plaintiff repeats and realleges each of the foregoing allegations as if
11   fully set forth herein.

12   83.   At all times relevant herein, the Consumer Legal Remedies Act
13   (CLRA) was in effect. CLRA prohibits "unfair or deceptive acts or practices."

14   84.   The acts complained of herein, which were committed by Defendants
15   constitute "unfair or deceptive acts or practices."   Had Plaintiff and members of
16   the Class known Defendant's scheme, they would not have purchased their tickets
17   from TicketsNow.   Defendant, at all relevant times, knew that Plaintiff and
18   members of the Class did not know or could not have reasonably discovered
19   Defendants' scheme.

20   85.   As a result of Defendants' scheme, Plaintiff and members of the Class
21   have been damaged.

22   86.   Plaintiff requests that Defendants be enjoined from the wrongful acts
23   described herein.

24                                    **COUNT V**

25              **(For Violations of New York Gen. Bus. Law § 349)**

26   87.   Plaintiff repeats and realleges each of the foregoing allegations as if
27   fully set forth herein.

28

---

23

**CLASS ACTION COMPLAINT**

88.   By their conduct, Defendants engaged and continue to engage in deceptive acts and practices in the conduct of business, trade and commerce, and in the furnishing of services within New York State, all in violation of New York General Business Law ("GBL") § 349.

89.   GBL § 349(h) provides in relevant part that:

... any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, [and] an action to recover his actual damages ...

90.   Plaintiffs are "person[s] who have been injured" by reason of the Defendant's violation of GBL § 349.

91.   The above-referenced deceptive acts and practices have directly and proximately and forseeably resulted in damages to Plaintiffs and Class members.

92.   Plaintiff is therefore entitled to damages in an amount to be determined at trial.

**WHEREFORE,** Plaintiff prays that the Court enter judgment and orders in her favor and against Defendant as follows:

A. An order certifying the Class and directing that this case proceed as a class action;

B. Judgment in favor of Plaintiff and the members of the Class in an amount of actual damages or restitution to be determined at trial;

C. An order enjoining Defendants from the illegal practices described herein;

D. An order granting reasonable attorneys' fees and costs, as well as pre- and post judgment interest at the maximum legal rate; and

E.   Such other and further relief as this Court may deem appropriate.

**CLASS ACTION COMPLAINT**

1

## DEMAND FOR JURY TRIAL

2

Plaintiffs hereby respectfully demand a jury trial to the extent permitted by

3

law.

4

5

Dated:        February 5, 2009

6

7

Paul R. Kiesel

Patrick DeBlase

8

**Kiesel, Boucher & Larson LLP**

9

8648 Wilshire Boulevard

Beverly Hills, CA 90211

10

310-854-4444

11

310-854-0812

12

13

Paul O. Paradis

Gina M. Tufaro

14

January L. Kerr

**Horwitz Horwitz & Paradis,**

15

**Attorneys at Law**

16

28 West 44th Street

16th Floor

17

New York , NY 10036

18

212-404-2200

19

212-404-2226

20

James V. Bashian

21

**The Law Offices of**

**James V. Bashian, P.C.**

22

500 Fifth Avenue, Suite 2700

23

New York , NY 10110

212-921-4110

24

212-921-4249

25

26

27

28

25

**CLASS ACTION COMPLAINT**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Consuelo B. Marshall and the assigned discovery Magistrate Judge is Paul L. Abrams.

The case number on all documents filed with the Court should read as follows:

## CV09- 912 CBM (PLAx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Paul R. Kiesel, Esq. (SBN 119854)
Patrick DeBlase, Esq. (SBN 167138)
KIESEL BOUCHER LARSON LLP
8648 Wilshire Blvd., Beverly Hills, CA 90211
Tel.: (310) 854-4444
Fax: (310) 854-0812

ORIGINAL

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLEN DIAMOND, individually, and on behalf of all others similarly situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>TICKETMASTER ENTERTAINMENT, INC. and TICKETSNOW.COM, INC.,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV09-0912CBM PLA<br><br><br>SUMMONS |

TO:    DEFENDANT(S):  TICKETMASTER ENTERTAINMENT, INC. and TICKETSNOW.COM, INC.

A lawsuit has been filed against you.

Within   20   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney,  KIESEL BOUCHER LARSON _____ , whose address is  8648 Wilshire Blvd., Beverly Hills, CA 90211 _____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:    FEB - 6 2009

By: _Natalie Hungaria_
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                    **SUMMONS**



Paul R. Kiesel, Esq. (SBN 119854)
Patrick DeBlase, Esq. (SBN 167138)
KIESEL BOUCHER LARSON LLP
8648 Wilshire Blvd., Beverly Hills, CA 90211
Tel.: (310) 854-4444
Fax: (310) 854-0812

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ELLEN DIAMOND, individually, and on behalf
of all others similarly situated,

PLAINTIFF(S)

v.

TICKETMASTER ENTERTAINMENT, INC. and
TICKETSNOW.COM, INC.,

DEFENDANT(S).

CASE NUMBER

**CV09-0912 CBM**

**SUMMONS**

TO:   DEFENDANT(S):  TICKETMASTER ENTERTAINMENT, INC. and TICKETSNOW.COM, INC.

A lawsuit has been filed against you.

Within   20   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney,  KIESEL BOUCHER LARSON , whose address is  8648 Wilshire Blvd., Beverly Hills, CA 90211 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:    **FEB - 6 2009**

By:    **NATALIE LONGORIA**

Deputy Clerk

1198

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

©COPY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
ELLEN DIAMOND, individually, and on behalf
of all others similarly situated

**DEFENDANTS**
TICKETMASTER ENTERTAINMENT, INC. and
TICKETSNOW.COM, INC.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
KIESEL BOUCHER LARSON LLP
8648 Wilshire Boulevard
Beverly Hills, Ca 90211

Attorneys (If Known)
Paul R. Kiesel, Esq.
Patrick DeBlase, Esq.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No     ☐ MONEY DEMANDED IN COMPLAINT: $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. 15. Violations of the Sherman Act

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☑ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

# CV09-0912

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case numbers(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | New York |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

(c)  List the County in this District; California County outside of this District; State if other than California, or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _[signature]_     Date  February 5, 2009

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |